UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SUSAN B. TAYLOR,

                  Plaintiff,

                                              DECISION AND ORDER
    v.                                      07-CV-0557-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.
_____

## **INTRODUCTION**

Plaintiff Susan B. Taylor commenced this action pursuant to 42 U.S.C. § 405(g), on August 23, 2007, seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") disallowing the plaintiff's claim for Supplemental Security Income ("SSI") under the Social Security Act. The plaintiff claims to be disabled as a result of back problems, disc problems, arthritis, asthma, and osteoporosis. The Commissioner moves for judgement on the pleadings on grounds that the administrative law judge's decision was supported by substantial evidence. The plaintiff opposed the defendant's motion, and cross-moves for judgement on the pleadings.

For the reasons stated herein, the Court grants judgment on the pleadings for the plaintiff and remands the matter for calculation of benefits because the Commissioner's decision denying the plaintiff benefits under SSI was not supported by

1

substantial evidence. Furthermore, a rehearing is unnecessary because there is substantial evidence on the record that the plaintiff is disabled.

## **PROCEDURAL HISTORY**

The plaintiff filed an application for Social Security disability insurance benefits on November 26, 2003, alleging disability since June 23, 2000. (Tr. 68-69). A hearing was held before Administrative Law Judge ("ALJ") Robert C. Deitch on September 1, 2005, in which the plaintiff and a vocational expert ("VE") appeared. (Tr. 262-292). ALJ Deitch evaluated the plaintiff's claim *de novo*, and on October 17, 2005 found that she was not disabled. (Tr. 18-27). On July 23, 2007, the Appeals Council denied the plaintiff's request for review and, thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5). The plaintiff then commenced this action.

## **BACKGROUND**

The plaintiff was 48 years old at the time of her alleged onset of disability and 53 at the time of the ALJ's decision. She has an 11th grade education and no significant previous work history. She alleges that her disability began on June 23, 2000 due to an onset of degenerative disc disease, osteoporosis, arthritis in hands, constant pain, and asthma. (Tr. 76).

From August 25, 2003 through June 29, 2005, the plaintiff saw Dr. Michael Calabrese. (Tr. 232-256). Dr. Calabrese treated the plaintiff for pelvic pain, depression with anxiety, low back pain, neck pain, arm and hand pain, and

gynecological problems. During that time, he prescribed her various asthma, pain, and anxiety medications such as Advair, Effexor. Lidoderm, and Hydrocodone. (Tr. 127-135). On July 13, 2004, he opined in a Residual Functional Capacity ("RFC") Assessment that the plaintiff could not lift any weight, could only stand up to two hours per day, could not push or pull, and could not be around extreme changes in temperature. (Tr. 203). Dr. Calabrese also referred the plaintiff to Ken-Ton Open MRI Spiral CT & Radiology, where an MRI revealed that the plaintiff had Luschka joint spurs that caused neural foraminal stenosis in her cervical spine. (Tr. 228).

The plaintiff was treated by podiatrist Dr. Diane Fortman on and off for 20 years. (Tr. 275). On August 31, 2005, Dr. Fortman completed a RFC Assessment on the plaintiff. (Tr. 261). Dr. Fortman stated that the plaintiff could occasionally lift and carry five pounds; stand and/or walk less than two hours per day; sit up to eight hours a day; could push/pull with the upper extremities; and could not push/pull with the lower extremities. Id.

On June 2, 2004, the plaintiff was consultatively examined by Dr. Steven Dina. (Tr. 188). Dr. Dina reported that the plaintiff's gait was normal and she had some difficulty walking on her toes. (Tr. 189). The plaintiff's cervical and lumbar spine had full range of motion and her straight leg raising test was negative bilaterally. Id. Dr. Dina opined that the plaintiff should avoid activities that involve repetitive bending, squatting, and lifting of medium weights. (Tr. 191). She should also avoid exposure to triggering factors for her asthma. Id. Of note, Dr. Dina made no determination on how long the plaintiff would be able to sit or stand.

3

The ALJ applied the five-step analysis in reaching his disability determination. At the first step, the ALJ found that the plaintiff was not engaged in substantial gainful activity during the relevant period. (Tr. 20). At step two, the ALJ found that the plaintiff's cervical and lumbar disc disease, asthma, anxiety disorder, and personality disorder were severe impairments. Id. At step three, the ALJ found that the plaintiff's severe impairments did not meet or equal the criteria contained under the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-25). He then proceeded to the fourth step and found that the plaintiff had no past relevant work. (Tr. 25). Before reaching the fifth step, the ALJ rejected the determinations made by the plaintiff's treating physicians and found that the plaintiff had a RFC for light work. Id. The ALJ rejected the opinions of the plaintiff's treating physicians because of their inconsistencies with MRI results, the consultative examination by Dr. Dina, and the plaintiff's self-reported daily activities. Id. At the fifth step, the ALJ determined that there were other jobs in significant numbers requiring a light level of exertion that the plaintiff could perform. (Tr. 26).

The plaintiff alleges that the ALJ erred by rejecting the determinations of the plaintiff's two treating physicians and finding that the plaintiff could perform light work without first recontacting her treating physicians to clarify alleged inconsistencies.

## **DISCUSSION**

The Court must uphold the Commissioner's decision if it is free of legal error and based on substantial evidence. 42 U.S.C. § 405(g). The Supreme Court has defined the term "substantial evidence," in the context of a Social Security case, as

4

"more than a mere scintilla" and as that evidence which "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

In order to establish a disability under the Act, the plaintiff has the burden of demonstrating (1) that she was unable to engage in substantial gainful activity by reason of a physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. See 42 U.S.C. § 1382c(a)(3). An individual can be found disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy..." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation for the adjudication of disability claims:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the Secretary determines whether the claimant is capable of performing any other work.

See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R § 416.920. The burden is on the claimant at the first four steps of the evaluation. If the claimant establishes that she is not capable of performing her past relevant work, then the burden shifts to the Commissioner who must then determine whether the claimant is capable of performing other work which exists in significant numbers in the national economy. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

Here, the ALJ applied the five-step analysis in reaching his disability determination. At the first step, the ALJ found that the plaintiff was not engaged in substantial gainful activity during the period at issue. (Tr. 20). At step two, the ALJ found that the plaintiff's cervical and lumbar disc disease, asthma, anxiety disorder, and personality disorder were severe impairments under 20 C.F.R. § 416.920(c). Id. Therefore, the ALJ proceeded to step three of the sequential evaluation, and considered whether the plaintiff had an impairment, or combination of impairments, severe enough to meet or equal the criteria of one of any listed impairments that the Commissioner presumes are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 416.920(d),(e). The ALJ found that the plaintiff's severe impairments did not meet or equal the criteria contained under the Listing of Impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-25). He then proceeded to the fourth step and found that the plaintiff had no past relevant work under 20 C.F.R. § 416.965. (Tr. 25). At the fifth step, the ALJ determined that there were other jobs in significant numbers requiring a light level of exertion that the plaintiff could perform based on the testimony of a VE and application of the Medical Vocational Rules of Appendix 2, Subpart P, Regulations No. 4. (Tr. 26).

**I.    The ALJ Failed to Give Proper Weight to the Opinion of the Plaintiff's Treating Physicians.**

The Plaintiff argues that the ALJ committed reversible error by rejecting the opinions of the plaintiff's treating physicians, Dr. Calabrese and Dr. Fortman, without first recontacting them to support their opinions. For the reasons stated, the Court finds that the ALJ failed to accord controlling weight to the opinions of the plaintiff's treating physicians.

It is well established that the opinion of a treating physician is entitled to controlling weight if well supported and not contradicted. See 20 C.F.R. § 416.927; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). The ALJ must provide explanations, or "good reasons," when choosing to discount the opinion of a treating physician. See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). Unless the lack of objective findings is "overwhelming," the ALJ is not permitted to conclude that they are insufficient to support the opinion of a treating physician. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). In addition, when the treating physician's opinion is not given controlling weight, the ALJ must apply various factors in order to ascertain the weight to give the opinion: (1) the frequency of examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. See 20 C.F.R. § 416.927; see also Rosa, 168 F.3d at 78.

The Court finds that the ALJ erred by failing to accord controlling weight to the opinion of the plaintiff's treating physicians, Dr. Calabrese and Dr. Fortman.[1] As noted, Dr. Calabrese, who treated the plaintiff for almost two years for a variety of medical ailments, opined that the plaintiff could only stand for two hours per day and could not lift any weight. (Tr. 203). Likewise, Dr. Fortman, the plaintiff's podiatrist, who the plaintiff testified had treated her on and off for 20 years, opined that the plaintiff could only stand or walk for two hours per day and could lift or carry less than five pounds. (Tr. 275, 261). If the ALJ had accorded controlling weight to the opinions of the plaintiff's treating physicians, their RFC assessments would have mandated a finding that the plaintiff was limited to sedentary work. Instead, the ALJ rejected their opinions that the plaintiff could not stand for more than two hours or lift more than five pounds and ultimately concluded that the plaintiff could perform a full range of light work. (Tr. 21).[2]

The ALJ rejected the opinions of Dr. Calabrese and Dr. Fortman as: (1) inconsistent with MRI results; (2) inconsistent with Dr. Dina; and (3) inconsistent with the plaintiff's daily activities. (Tr. 25). With regard to the MRI results, the ALJ found that

---

[1] Alternatively, the ALJ failed to the consider the relevant factors as required by 20 C.F.R. § 416.927 when a treating physician's opinion is not given controlling weight.

[2] According to the regulations, "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and or leg controls. To be considered capable of performing a full range or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

"diagnostic studies of the cervical and lumbar spines have revealed <u>no evidence</u> of disc herniation or nerve root impingement/compression" <u>Id.</u> (emphasis added). However, the MRI results do reveal that there are Luschka joint spurs on the plaintiff's cervical spine that cause neural foraminal stenosis. (Tr. 228). Because the MRI results provide objective evidence to support the plaintiff's subjective complaints of pain, they support rather than contradict the conclusions of the plaintiff's treating physicians.

The ALJ also rejected the treating physicians' opinions as inconsistent with Dr. Dina's June 2004 consultative exam, which was "essentially unremarkable" according to the ALJ. (Tr. 25). "The reports of individual examinations are generally given less weight because they lack the unique perspective to the medical evidence that a treating physician's opinion would provide." See <u>Iannopollo v. Barnhart</u>, 208 F.Supp.2d 41, 48 (W.D.N.Y. 2003) (citing 20 C.F.R. § 404.1527(d)(2)).

Importantly, Dr. Dina made no determination on the plaintiff's ability to stand for long periods of time. (Tr. 191). A consultative report that is silent regarding a claimant's ability to perform a given function cannot be presumed to endorse an unlimited ability to perform that function. See <u>Rosa</u>, 168 F.3d at 81. The ALJ improperly interpreted Dr. Dina's silence as an unlimited ability to stand. In the absence of evidence showing that Dr. Dina's report contradicted the RFC determinations of plaintiff's treating physicians, the conclusions of plaintiff's treating physicians should have been given controlling weight. Furthermore, according to plaintiff's testimony, which the ALJ never found to lack credibility, Dr. Dina examined her for only five minutes. (Tr. 276). He felt her neck, back, and made her bend over, but did not check her feet or record her complaint that she could not feel her toes. <u>Id.</u> The ALJ erred in

9

giving Dr Dina's one-time, brief examination more weight than an assessment done by a Dr. Calabrese who had regularly seen the plaintiff once a month for two years and Dr. Fortman who had seen the plaintiff on and off for 20 years.

As a third basis for rejecting the opinions of plaintiff's treating physicians, the ALJ found that plaintiff's "self-reported activities of daily living are inconsistent with the degree of limitations set forth by Dr. Calabrese and Dr. Fortman." (Tr. 25). Contrary to the ALJ's conclusion, nothing in the plaintiff's testimony conflicts with the treating physicians' finding that she cannot stand more than two hours or lift more than five pounds. The plaintiff testified that she cannot stand for more than 30 minutes and the majority of her day is spent sitting or lying down. (Tr. 280). Although the plaintiff testified that she performs activities such as preparing meals, doing laundry, and cleaning, she also testified that she cannot perform those tasks without assistance from her teenage and adult children. (Tr. 270, 278, 279, 285). For example, the plaintiff can do the laundry, but her children must carry the clothes up the stairs. (Tr. 270). Although she prepares meals, she must do so while sitting at the kitchen table. (Tr. 285). She only goes shopping if necessary, while her daughters typically do it for her. (Tr. 279). The plaintiff also testified that due to back pain, she has to lie down for 20 minutes at least three times a day and she often has to lie down for the entire day. (Tr. 282-283). She also quit her job at a pizzeria after two days because she could not stand on her feet for a full workday. (Tr. 268). The ALJ did not reject the plaintiff's testimony as lacking in credibility and therefore, nothing about her testimony contradicts the treating physicians' determination that she cannot stand for more than two hours or lift more than five pounds.

10

In addition, the treating physicians' RFC assessments are consistent with other medical evidence contained within the record. Dr. Calabrese's treatment notes indicated that the plaintiff complains of low back pain and stiffness that increases with prolonged sitting and standing. (Tr. 234). He also prescribed the plaintiff pain medications such as Amitriptyline, Lidoderm, and Hydrocodone. (Tr. 127-135). Dr. Calabrese referred the plaintiff to Ken-Ton Physical Therapy ("Ken-Ton") for treatment of her back problems. Ken-Ton reported to Dr. Calabrese that the plaintiff has "cervical spine pain with physical findings of decreased flexibility, increased muscle tightness, and decreased joint mobility." (Tr. 180). Ken-Ton also noted that the plaintiff cannot lift weights, her back hurts daily, and there is pain with pressure at her neck muscles. (Tr. 201). Dr. Fortman, the plaintiff's other treating physician and podiatrist, noted that the plaintiff complains of numbness and has minimal sensation in her feet. (Tr. 260). The medical records of Dr.'s Calabrese and Fortman, as well as the physical therapy records of Ken-Ton, all support their conclusion that the plaintiff cannot stand or sit for long periods of time. Because the opinions of the plaintiff's treating physicians are well supported and not contradicted by other evidence in the record, the Court finds that the ALJ improperly declined to accord controlling weight to those opinions.

Furthermore, the ALJ's determination that the plaintiff could perform light work is not supported by substantial evidence. As noted above, light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weight up to 10 pounds [and] a good deal of walking or standing, or... sitting most of the time with some pushing and pulling of arm and or leg controls." 20 C.F.R. § 416.967(b). For the reasons stated, the ALJ's determination that plaintiff could perform light work is

11

not supported by substantial evidence because the weight of evidence indicates that she cannot stand or walk for more than two hours per day and cannot lift more than five pounds.

## II. Disposition

Since the Court has found that the ALJ committed legal error, the case must either be (1) remanded for reconsideration by the Commissioner upon the existing record or upon a record to be amplified, or (2) remanded for calculation of benefits. Under 42 U.S.C. § 405(g),

> [t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner [ ] for further action by the Commissioner [ ], and it may at any time order additional evidence to be taken before the Commissioner [ ], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

"No purpose would be served by... remanding the case for rehearing unless the [Commissioner] could offer additional evidence." Balsamo, 142 F.3d at 82 (quoting Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 644 (2d cir. 1983)).

Here, the Court finds that it is unlikely that the Commissioner will be able to offer additional evidence that supports or outweighs the substantial evidence of the plaintiff's disability. It is unnecessary to ask Dr. Dina to make a determination regarding the plaintiff's ability to stand because her two treating physicians agree that she cannot stand for more than two hours or lift more than five pounds. The treating physicians' assessment is given controlling weight because it is well-supported by other evidence in

the record, including the plaintiff's testimony and an MRI showing nerve root problems in her cervical spine.

It is also unnecessary to re-evaluate the plaintiff's RFC through a rehearing because the VE testified that if a hypothetical person was limited to standing or walking for less than two hours in an eight hour day, he or she would be limited to sedentary work. (Tr. 288). Applying the plaintiff's age, limited 11th grade education, and lack of relevant work experience to the Medical-Vocational Guidelines found in Appendix 2 to 20 C.F.R. Part 404, Subpart P, Rule 201.09, the plaintiff became "disabled" as of her 50th birthday, October 31, 2002. The plaintiff was not disabled for the first two years of disability when she was still in the "younger individual category" and under Rule 201.18 of the Medical-Vocational Guidelines.

## **CONCLUSION**

This Court finds that the Commissioner's decision denying the plaintiff benefits under SSI was not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. Therefore, judgement on the pleadings in favor of the plaintiff is granted. This matter is remanded to the Social Security Administration for calculation of benefits commencing on October 31, 2002.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATED: July 31, 2009

13